**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL CASE NO.** |
| **v.** | **1:12-CR-88-TWT-GGB** |
| **NEAL LANDERS** | |

**FINAL ORDER, REPORT AND RECOMMENDATION**

Defendant Neal Landers is charged in a 25-count indictment. Counts 1-16 of the indictment charge that Landers committed wire fraud while serving as a closing attorney in various real estate transactions. Counts 17-23 charge Landers with money laundering in connection with the wire fraud scheme alleged in Counts 1-16. Count 24 alleges that Landers devised and executed a scheme to defraud Wachovia Bank, and Count 25 alleges that Landers made false statements on a loan application for the purpose of influencing the actions of Washington Mutual Bank.

Pending before the Court are the following motions filed by Landers: Preliminary Motion to Sever [Doc. 37]; Motion for Bill of Particulars [Doc. 38]; Motion to Suppress Statements [Doc. 39]; and Motion for Additional Time to File Notice of Expert Evidence of a Mental Condition Under Fed.R.Crim.P. 12.2(B) [Doc. 40].

## I. Preliminary Motion to Sever

Landers alleges that Counts 1-23 are improperly joined with Counts 24 and 25. In determining whether counts are properly joined in an indictment, two requirements must be met. First, joinder must be proper under Fed. R. Crim. P. 8(a); and second, the joinder of charges must not cause compelling prejudice to the defendant under Fed. R. Crim. P. 14. See United States v. Hersh, 297 F.3d 1233, 1241 (11th Cir. 2002).

### A. Joinder under Rule 8(a)

Fed. R. Crim. P. 8(a) allows joinder of charges that are "connected with or constitute parts of a common scheme or plan." The court may consider the government's proffer when ruling on a Rule 8 motion to sever. Hersh, 297 F.3d at 1241 n. 10.

The indictment alleges in Counts 1-23 that Landers, an attorney, conducted real estate closings in which he did not properly disburse the funds paid into his escrow/trust account for purposes of the closing. According to the indictment, Landers would delay payment to the proper parties to the closing. He would then use the money that was intended to fund the closing to pay parties from previously completed real estate transactions and for personal purposes unrelated to the closing.

2

The government proffers that to perpetuate this scheme, Landers was in constant need of more money. According to the government, one way Landers obtained more money was to commit new criminal acts such as the bank frauds charged in Counts 24 and 25. Also, the government alleges that the conduct alleged in Counts 24 and 25 was intended to delay the detection of the offenses charged in Counts 1-23.

Activities are considered part of a common scheme when one illegal activity provides the impetus for the other illegal activity. United States v. Dominguez, 226 F.3d 1235, 1239 (11th Cir. 2000). Also, joinder is proper where one offense facilitated efforts to avoid the detection of other offenses. See United States v. Kopituk, 690 F.2d 1289, 1314 (11th Cir. 1982). Based on the nature of the charges and the government's proffer, all counts were properly joined under Rule 8(a).

### B. Prejudice under Rule 14

Landers argues that even if the offenses are properly joined, the court should exercise its discretion to sever the counts because a joint trial of all charges will cause "compelling prejudice" to Landers. Fed. R. Crim. P. 14 provides for relief from prejudicial joinder in the discretion of the court.

However, the government's proffer shows that the charges are related and that even in separate trials, the evidence from all of the charged offenses would likely be admissible. Moreover, any potential prejudice from having multiple crimes charged in a single indictment can be cured by careful instructions from the court that each count is to be considered separately. See United States v. Harper, 680 F.2d 731, 734 (11th Cir. 1982). For these reasons, Defendant's Motion to Sever Counts should be denied.

## II.     Motion for Bill of Particulars

Landers moves for a bill of particulars which he contends is necessary to allow him to prepare a defense and avoid surprise at trial and double jeopardy issues.

"The purpose of a bill of particulars is to inform the defendant of the charge[s] against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985). A bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial. See United States v. Perez, 489 F.2d 51, 70-71 (5th Cir. 1973).

4

The government's detailed response establishes that the indictment and discovery provided to Landers accomplishes the purposes of allowing Landers to prepare a defense, avoid surprise, and avoid double jeopardy issues. Landers did not reply to the government's response. For reasons stated in the government's response, Landers' Motion for Bill of Particulars is denied.

### III. <u>**Motion to Suppress Statements**</u>

Landers originally moved to suppress two categories of statements: (1) statements that he made in a deposition in a civil case, and (2) statements that he made during jail calls with an attorney or with individuals who were acting as intermediaries to his attorney. After the government filed its response brief, Landers filed a reply, agreeing to withdraw the motion as it pertains to Landers's deposition testimony as long as he could renew it if he obtained new evidence relating to its admissibility. (Doc. 47, p. 6). The court will consider the motion to suppress the deposition testimony withdrawn without prejudice. If Landers later decides to renew it, he will have to file a motion to allow an out-of-time motion.

The parties have narrowed their dispute to one telephone call ("Call 141") that Landers made to attorney Nelson O. Tyrone, III ("Tyrone"). A hearing on Landers's

5

motion to suppress was held before me on August 30, 2012. The transcript of that hearing has been filed and will be referred to as Doc. 51.

### A. FACTS

Tyrone represented Landers in civil litigation in Gwinnett County Superior Court brought by Ticor Title Insurance Co. against Landers (The "Ticor Matter"). (Doc. 56, pp. 2-3, 6; Def. Exh. 2 (Tyrone Aff.); Gov. Ex. 1 (CDR copy of Call 141)). Landers was indicted in this court on March 20, 2012 on charges related to the Ticor Matter. Thomas Hawker, an attorney with the Federal Defender Program, Inc., was appointed to represent Landers on March 30, 3012. However, Tyrone was also serving as attorney for Landers at the time of Call 141 which Landers made to Tyrone while Landers was incarcerated in the Robert A. Deyton Detention Facility ("RADDF") in Lovejoy, Georgia on the instant charges. (Def. Ex. 2). Call 141 occurred on April 16, 2012.

While Landers was incarcerated, on April 2, 2012, Charlotte Johnson, a classification manager at RADDF, gave Landers a copy of RADDF's Detainee Orientation and Reference Handbook ("the handbook"). To verify his receipt, Landers signed an Acknowledgment of Receipt of Detainee Handbook. (Doc. 51 at 18-20, 22; Gov't Ex. 3). Ms. Johnson did not read the handbook to Landers.

6

The handbook is 38 pages long. A Table of Contents on page 2 of the handbook informs the reader that the "Telephone Rules" are on page 31. The following information appears at the bottom of Page 31 and continues on to Page 32:

**USE OF TELEPHONES**
Detainees may place collect telephone calls from telephones located in their housing units. THESE CALLS MAY BE MONITORED AND RECORDED BY THE FACILITY. All detainees are expected to adhere to the time limits imposed to ensure adequate opportunity for everyone to use the telephone.

(Doc. 51 at 17; Gov't Ex. 2 at 31-32 (emphasis in original)). In addition, all detainees are advised of RADDF's recording policy by an audio warning that precedes each connected call. (Doc. 51 at 15).

The handbook also sets out the procedure by which a detainee may make a private telephone call to an attorney:

Detainees wishing to place a private telephone call to an attorney may do so after completing a Detainee Request Form and after the phone number has been verified/approved. Requests should be submitted to the Case Manager.

(Gov. Ex. 2 at 32). Landers never completed a form requesting that RADDF not record calls between Landers and his attorneys.[1] On April 16, 2012, Landers made

---

[1] RADDF did not record calls between Landers and his court-appointed attorney, Thomas Hawker, because RADDF does not record calls made to the Federal Defender Program. RADDF does not advise detainees of this policy which results in some

7

Call 141 to Tyrone. They discussed matters relating to Landers's pending criminal case. Call 141 was preceded by a warning that the call was subject to monitoring and recording.

The government introduced into evidence two jailhouse calls between Landers and his girlfriend that preceded Call 141. (Doc. 51 at 37; Gov't Ex. 6). On April 2, 2012 (over call 1333419040_138, time stamp: 5:45), Landers stated that he did not want to discuss the details of his case over the phone. (Gov't Ex. 6). On April 13, 2012 (over call 1334374763_140, time stamp: 6:45), Landers acknowledged that his jail calls were being recorded. (Id.). Landers did not testify at the hearing.

## B. DISCUSSION

Landers argues that Call 141 should be suppressed because it was protected by attorney-client privilege.

"The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991). A party must show the existence of an attorney-client relationship and that the

---

detainees completing the Detainee Request Form to ensure that their calls to the Federal Defender Program are not recorded. (Doc 51 at pp. 15-16, 25-27)

communication in question was "(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential." United States v. Bell, 776 F.2d 965, 971 (11th Cir. 1985) (emphasis in original). The party claiming privilege also bears the burden of demonstrating that it has not been waived. United States v. Noriega. 917 F.2d 1543, 1550 (11th Cir. 1990).

Several cases outside the Eleventh Circuit have held, or strongly support the government's position, that where an inmate is aware that his calls are being recorded, those calls are not protected by a privilege. See United States v. Hatcher, 323 F.3d 666, 674 (8th Cir. 2003) (attorney-client privilege); United States v. Madoch, 149 F.3d 596, 602 (7th Cir. 1998) (marital privilege); United States v. Mejia, 655 F.3d 126, 133 (2d Cir. 2011); United States v. Lentz, 419 F. Supp.2d 820, 828-29 (E.D. Va. 2005); United States v. Eye, 2008 WL 1701089, *12 (W.D. Mo. April 9, 2008); Carley v. Temple, 2012 WL 3233596, 2 (M.D. La. July 2, 2012).

As the court reasoned in Hatcher, the "presence of the prison recording device destroy[s] the attorney-client privilege" because "the inmates and their lawyers" cannot "reasonably expect that their conversations [will] remain private." Hatcher, 323 F.3d at 674. In such circumstances, "the recording device [is] the functional equivalent of the presence of a third party." Id.; cf. United States v.

9

Friedman, 300 F.3d 111, 123 (2d Cir. 2002) (no reasonable expectation of privacy where an inmate was on notice that his calls were recorded).

Landers relies on a series of three cases involving the prosecution of former Panamanian General Manuel Noriega: United States v. Noriega, 752 F. Supp. 1032 (S.D. Fla. 1990); United States v. Noriega, 917 F.2d 1543 (11th Cir. 1990); and United States v. Noriega, 764 F.Supp. 1480 (S.D. Fla. 1991). The first two cases involved Noriega's attempt to prevent Cable News Network ("CNN") from broadcasting recordings of telephone conversations between Noriega and his defense attorney that took place while Noriega was incarcerated prior to trial. While the Eleventh Circuit opinion contains general language about the attorney-client privilege, it left it to the district court to determine whether Noriega's calls were privileged. The Eleventh Circuit stated that the determination of whether the telephone communications between Noriega and his defense counsel were privileged would be relevant to the district court's assessment of potential harm to Noriega's right to a fair trial. 917 F.2d at 1551.

In the third Noriega case, the district court addressed Noriega's motion to dismiss the indictment against him on the ground that the government's listening to

an attorney-client telephone discussion violated Noriega's Sixth Amendment right to counsel. 764 F.Supp. at 1484.

Ultimately, the district court denied Noriega's motion to dismiss based on lack of prejudice to Noriega. 764 F.Supp. at 1488-1489. However, in its analysis, the district court discussed the objective and subjective confidentiality elements of the attorney-client privilege: whether the communications between Noriega and his attorney were (1) intended to be confidential and (2) were reasonably expected and understood to be confidential. Id. at 1484.

Noriega had been informed that the prison reserved the authority to monitor and record his telephone conversations. However, a consent form, a sticker on the telephone assigned to him, and an orientation manual advised him that "a properly placed phone call to an attorney is not monitored" The district court found that the prison had not sufficiently explained the term "properly placed" to Noriega and that lack of explanation resulted in an ambiguity. Id. at 1485.

The district court also found that in order to ensure that a call to his attorney was private, Noriega was required to inform a guard, who then had to refer the request to a member of Noriega's "unit team" that Noriega wished the call to be "unmonitored" or "privileged". Id. Noriega had to use the terms "unmonitored" or

"privileged" but the prison did not adequately explain to Noriega the importance of using those specific terms. Id. at 1487.

The district court ruled that the prison had failed to sufficiently inform Noriega as to the procedure for placing an unrecorded call to an attorney. Id. However, the court also stated that, "Whether or not Noriega received adequate notice of these procedures would, of course, be irrelevant if in fact Noriega was actually aware that his calls to his attorneys were being monitored. In such case, Noriega could not claim that these conversations were intended to remain confidential, as required under the first prong of the test carved out by the Eleventh Circuit." Id. at 1487-88. The court found the evidence of Noriega's subjective intent of confidentiality to be inconclusive, and based its decision on lack of requisite prejudice. Id. at 1488

The circumstances here are considerably different from the unique facts of Noriega. In contrast to the situation in Noriega, Landers, an attorney, listened to an unambiguous recording prior to Call 141 that informed him that his call to his attorney was subject to monitoring and recording. There was no likelihood of confusion about an ambiguous phrase or procedure. Landers was also given an unambiguous warning in a handbook that his calls were subject to recording and monitoring unless he followed the procedure set forth in the handbook for making

12

calls to an attorney. Moreover, Landers's two previous telephone calls with his girlfriend support the conclusion that Landers knew that his calls were being monitored or recorded. Under the circumstances of this case, I find that Landers had neither an objectively reasonable nor subjective expectation that Call 141 would be confidential.

For these reasons, I recommend that Landers's Motion to Suppress Statements be denied.

### IV. Motion for Additional Time to File Notice of Expert Evidence of a Mental Condition Under Fed.R.Crim.P. 12.2(B)

Landers filed a motion asking for additional time to provide notice in writing to the government relating to a mental condition bearing on his guilt. The motion for additional time is granted. Any such notice shall be given within two weeks of the date of this Order, Report and Recommendation.

### V. Conclusion

In sum, I **RECOMMEND** that Defendant Landers's Preliminary Motion to Sever [Doc. 37] be **DENIED** and that his Motion to Suppress Statements [Doc. 39] be **DENIED** subject to the conditions discussed above with respect to statements made in his civil deposition.

13

I **ORDER** that Landers's Motion for Bill of Particulars [Doc. 38] is **DENIED,** and his Motion for Additional Time to File Notice of Expert Evidence of a Mental Condition [Doc. 40] is **GRANTED**.

There are no pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial. It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

**IT IS SO ORDERED AND RECOMMENDED** this 7th day of November, 2012.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)